*Helms v Principal Life Ins. Co.*

# NOTICE OF REMOVAL

# EXHIBIT A

MICHAEL K. JEANES, CLERK
RECEIVED F C LOBBY
DOCUMENT DEPOSITORY

10 OCT 26 PM 3: 56

ORIGINAL   FILED   BY *Kse* , DEP

1  Michael G. Helms – 014470
   **THE HELMS LAW FIRM, P.L.C.**
2  2600 North Central Avenue, Suite 940
   Phoenix, Arizona 85004
3  Telephone: (602) 358-2060
   Fax: (602) 358-2055
4
   Attorneys for Best Western International, Inc.
5
6          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7            IN AND FOR THE COUNTY OF MARICOPA

8  Richard L. Helms,                     No.
                                              CV2010-017136
9             Plaintiff,
                                          **SUMMONS**
10 vs.

11 Principal Life Insurance Company,

12            Defendant.

13

14 **THE STATE OF ARIZONA TO THE DEFENDANTS:**

15
   Principal Life Insurance Company          If you would like legal advice from a lawyer,
16 c/o Director of Insurance                  contact the Lawyer Referral Service at
   2910 North 44th Street                           602-257-4434
17 2nd Floor                                            or
   Phoenix, AZ 85018                         www.lawyerfinders.org.
18                                               Sponsored by the
                                            Maricopa County Bar Association
19        **YOU ARE HEREBY SUMMONED** and required to serve upon the plaintiff's

20 attorney:
                   Michael G. Helms
21                 The Helms Law Firm, P.L.C.
                   2600 North Central Avenue
22                 Suite 9400
                   Phoenix, Arizona 85004
23
24 an answer to the complaint which is herewith served upon you, within 30 days after service

25 of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by

26

default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**OCT 22 2010**

**SIGNED AND SEALED** this date: _____



MICHAEL K. JEANES, CLERK

Clerk _____

By _____
Deputy Clerk

**J. FOLTS**



MICHAEL K. JEANES
Clerk of the Superior Court
By Jessica Folts, Deputy
Date 10/22/2010 Time 13:02:43
Description                    Amount
------- CASE# CV2010-017136 -------
CIVIL NEW COMPLAINT            301.00

TOTAL AMOUNT                   301.00
    Receipt# 20914388

**THE HELMS LAW FIRM, P.L.C.**
Michael G. Helms – 014470.
2600 North Central Avenue, Suite 940
Phoenix, Arizona 85004
Telephone: (602) 358-2060
Attorneys for Plaintiff

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR MARICOPA COUNTY

| | |
|---|---|
| Richard L. Helms, | No. CV2010-017136 |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT** |
| Principal Life Insurance Company, | |
| Defendant. | |

Plaintiff, Richard L. Helms, for his Complaint against Defendant, Principal Life

Insurance Company, states and alleges as follows:

1.      Plaintiff is a resident of Pinal County, Arizona.

2.      Defendant is a corporation with its principal place of business in Des Moines,

Iowa.  Defendant conducts significant business in the State of Arizona.

3.      For approximately thirty-seven (37) years, Plaintiff was employed by Defendant

at its principal headquarters in Des Moines, Iowa, until his retirement in 2006.  For many of such

years, Plaintiff served as a senior officer of Defendant and was a Vice President of Defendant

immediately prior to retirement.

4.      During the time of Plaintiff's employment by Defendant, Defendant offered

certain employee benefits to its employees, including Plaintiff.  Such employee benefits included

retirement benefits in order to encourage its employees to continue their employment service.

Said retirement benefits included certain group term life insurance on the life of the

employee/retiree.

5.     Prior to Plaintiff's retirement from Defendant, Defendant offered to retiring employees an option to "opt out" of the employee's right to receive a portion of the group term life insurance benefits and to alternatively elect to receive certain monthly supplemental retirement income (the "Opt Out Provision").  If an employee elected the Opt Out Provision, such election was irreversible.

6.     Defendant specifically offered to Plaintiff an Opt Out Provision to receive certain monthly supplemental retirement income in lieu of receiving a portion of Plaintiff's entitlement to group term life insurance.  Plaintiff accepted Defendant's offer, and retired from Defendant's employment on or about March 31, 2006.  In accepting Defendant's offer, Plaintiff surrendered his right to receive substantial amounts of life insurance coverage.

7.     From the time of Plaintiff's retirement until the present, Defendant has paid to Plaintiff the retirement benefits to which Plaintiff was, and is, entitled, including the monthly supplemental retirement income, in accordance with the agreement between Plaintiff and Defendant.

8.     On or about June 28, 2010, Defendant advised Plaintiff that Defendant intended to unilaterally reduce the monthly supplemental retirement income being paid to Plaintiff, and to which Plaintiff and Defendant had agreed, to be effective January 1, 2011.  Defendant further advised that Plaintiff's election to take the Opt Out Provision remained irreversible, and that Plaintiff could not now elect to take the group term life insurance benefit that he surrendered at the time of his retirement in 2006.

9.     Defendant has unequivocally refused to reconsider its reduction of Plaintiff's supplemental retirement income benefit, and Defendant's action is an anticipatory repudiation of the agreement between Plaintiff and Defendant.

10.    By such action, Defendant has breached its obligation to act fairly and in good faith, which obligation is implied in every contract, including the agreement between Plaintiff and Defendant.

11.    Defendant's actions are willful and with intent to cause injury to Plaintiff, were motivated by spite or ill will, and were taken to serve its own interests, having reason to know and consciously disregarding the substantial risk that such actions would significantly injure the rights of others.

12.    This matter arises out of contract, and Plaintiff is entitled to recover his reasonable attorney's fees and costs incurred herein.

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

a)  For entry of a preliminary and permanent injunctive relief enjoining Defendant from implementing any changes to the Opt Out Provision as agreed between Plaintiff and Defendant and in effect as of March 31, 2006;

b)  Entry of preliminary and permanent injunctive relief to enjoin Defendant from unilaterally reducing any other retirement benefits being provided to Plaintiff;

c)  An award of exemplary and/or punitive damages in an amount to be determined at trial;

d)  An award of reasonable attorney's fees and costs incurred herein against Defendant pursuant to A.R.S. § 12-341.01;

e)  For such other and further relief as the Court deems just and proper.

Dated this 22d day of October, 2010.

THE HELMS LAW FIRM, P.L.C.

By: _____
Michael G. Helms
2600 North Central Avenue
Suite 940
Phoenix, Arizona 85004
Telephone: (602) 358-2060
Attorneys for Plaintiff

MICHAEL K. JEANES, CLERK
BY *Holts*
DEP.
FILED

10 OCT 22 PM 1: 01

Michael G. Helms – 014470
**THE HELMS LAW FIRM, P.L.C.**
2600 North Central Avenue, Suite 940
Phoenix, Arizona 85004
Telephone: (602) 358-2060
Fax: (602) 358-2055

Attorneys for Best Western International, Inc.

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR MARICOPA COUNTY

CV 2010-017136

Richard L. Helms,

      Plaintiff,

vs.

Principal Life Insurance Company,

Defendant.

No.

**PLAINTIFF'S CERTIFICATE RE COMPULSORY ARBITRATION**

     The undersigned certifies that he knows the dollar limits and any other limitations set forth by the local rules of practice for the applicable superior court, and further certifies that this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

     Dated this 22 day of October, 2010.

THE HELMS LAW FIRM, P.L.C.

By_____
Michael G. Helms
2600 North Central Avenue, Suite 940
Phoenix, Arizona 85004
Attorneys for Best Western International,
Inc.

| Attorney or Party without Attorney:<br>MICHAEL G. HELMS #014470<br>THE HELMS LAW FIRM, P.L.C.<br>2600 NORTH CENTRAL AVE.<br>SUITE 940<br>PHOENIX, AZ 85004<br>Telephone No: (602) 358-2060 | | For Court Use Only<br><br>MICHAEL K. JEANES, CLERK<br>RECEIVED F C LOBBY<br>DOCUMENT DEPOSITORY<br><br>10 OCT 26 PM 3: 56<br><br>FILED<br>BY K Kee , DEP |
|---|---|---|
| Attorney for: Plaintiff | Ref. No. or File No.:<br>HELMS, RICHARD | |
| Insert name of Court, and Judicial District and Branch Court:<br>ARIZONA SUPERIOR, COUNTY OF MARICOPA | | |

Plaintiff: RICHARD L. HELMS
Defendant: PRINCIPAL LIFE INSURANCE COMPANY

| **AFFIDAVIT OF SERVICE**<br>**SUMMONS** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>CV2010-017136 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; VERIFIED COMPLAINT; MOTION FOR PRELIMINARY INJUNCTION; PLAINTIFF'S CERTIFICATE RE COMPULSORY ARBITRATION

3.  a. *Party served:*                       PRINCIPAL LIFE INSURANCE COMPANY c/o Director of Insurance
    b. *Person served:*               DEL WISECARVER, FISCAL SERVICE SPECIALIST, AS PERSON
                                           DESIGNATED TO ACCEPT ON BEHALF OF CHRISTINA URIAS, DIRECTOR
                                           OF INSURANCE.

4. *Address where the party was served:*           2910 N. 44TH STREET
                                             (2ND FLOOR)
                                             PHOENIX, AZ 85018

5. *I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of
        process for the party (1) on: Mon., Oct. 25, 2010 (2) at: 12:45PM

7. *Person Who Served Papers:*                 Fee for Service:      $73.38
    a. TERENCE A. STEINLE                I Declare under penalty of perjury under the laws of the State of
    b. NATIONWIDE LEGAL SERVICES, LLC.    ARIZONA that the foregoing is true and correct.
        800 N. 1ST AVENUE
        PHOENIX, AZ 85003
    c. 602-256-9700

                                  10-26-10               
                                  *(Date)*                             *(Signature)*

OFFICIAL SEAL
RENEE E. ELLIOTT
NOTARY PUBLIC - State of Arizona
PINAL COUNTY
My Comm. Expires May 4, 2012

8. *STATE OF ARIZONA, COUNTY OF*
    *Subscribed and sworn to (or affirmed) before me on this* 26 *day of* October *by* TERENCE A. STEINLE

    *proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

                                                                                    U

              AFFIDAVIT OF SERVICE             *(Notary Signature)*
                    SUMMONS                                28451.20152.157902

*Helms v Principal Life Ins. Co.*

# NOTICE OF REMOVAL

# EXHIBIT B

MICHAEL K. JEANES, CLERK
BY *Holts* DEP

FILED

10 OCT 22 PM 1:01

**THE HELMS LAW FIRM, P.L.C.**
Michael G. Helms – 014470.
2600 North Central Avenue, Suite 940
Phoenix, Arizona 85004
Telephone: (602) 358-2060
Attorneys for Plaintiff

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR MARICOPA COUNTY

| | |
|---|---|
| Richard L. Helms,<br><br>       Plaintiff,<br><br>vs.<br><br>Principal Life Insurance Company,<br><br>       Defendant. | No.  CV2010-017136<br><br>**MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiff, Richard L. Helms, through his undersigned counsel, hereby submits this motion for an Order enjoining Defendant:

a) from implementing any changes to the Opt Out Provision described in the Complaint herein as agreed between Plaintiff and Defendant and as in effect from March 31, 2006, through December 31, 2010;

b) from unilaterally reducing any other retirement benefits being provided to Plaintiff.

This Motion is supported by the Affidavit of Richard Helms, the Verified Complaint, and the following Memorandum of Points and Authorities:

## MEMORANDUM OF POINTS AND AUTHORITIES

**Statement of Facts**

1.      Plaintiff was employed by Defendant at Defendant's principal offices in Des Moines, Iowa, for approximately thirty-seven (37) years, retiring on March, 31, 2006. For many of those years, Plaintiff was a senior officer of Defendant.  (See, Affidavit of Richard Helms).

2.      During the time of Plaintiff's employment by Defendant, Defendant offered

various employment benefits to its employees, including Plaintiff, to encourage its employees to continue their employment with Defendant.  Such employee benefits included retirement benefits, and included group term life insurance on the life of the employee/retiree (See Affidavit of Richard Helms).

3.     During his employment with Defendant, Plaintiff became vested in the right to receive such retirement benefits, including the group term life insurance (See Affidavit of Richard Helms).

4.     Prior to Plaintiff's retirement from Defendant, Defendant offered to retiring employees the right to "opt out" of the employee's right to receive a portion of the group term life insurance benefits and to alternatively elect to receive certain monthly supplemental retirement income (the "Opt Out Provision").  Such election to take the Opt Out Provision was to be irreversible (See Affidavit of Richard Helms).

5.     Defendant specifically offered the Opt Out Provision to Plaintiff, extending to Plaintiff the right to elect to receive monthly supplemental retirement income in lieu of receiving a portion of Plaintiff's entitlement to group term life insurance (See Affidavit of Richard Helms).

6.     Plaintiff accepted Defendant's offer to take the Opt Out Provision, and retired from Defendant's employment on March 31, 2006.  In accepting Defendant's offer of the Opt Out Provision, Plaintiff surrendered his right to receive substantial amounts of life insurance coverage (See Affidavit of Richard Helms).

7.     From the time of Plaintiff's retirement until the present, Defendant has paid to Plaintiff the retirement benefits to which Plaintiff was entitled, including the monthly supplemental retirement income pursuant to the Opt Out Provision agreed upon between Plaintiff and Defendant (See Affidavit of Richard Helms).

8.     On or about June 28, 2010, Defendant advised Plaintiff that Defendant intended to unilaterally reduce the monthly supplemental retirement income being paid to those former employees who had retired between March 4, 2006, and February 28, 2010, including Plaintiff, to be effective January 1, 2011.  Such unilateral reduction in the monthly supplemental income benefit is contrary to the agreement made between Plaintiff and Defendant.   Defendant further advised that Plaintiff's election to take the Opt Out Provision remained irreversible, and that Plaintiff could not now elect to take the group term life insurance benefit that he surrendered at the time of his retirement in 2006 (See Affidavit of Richard Helms).

9.     Defendant has unequivocally refused to reconsider its reduction of Plaintiff's supplemental retirement income benefit, and Defendant's action is an anticipatory repudiation of the agreement between Plaintiff and Defendant (See Affidavit of Richard Helms).

**Argument**

Before granting an injunction, the Court must traditionally weigh four factors:

1.     whether the applicant has a likelihood of success on the merits;

2.     whether the applicant will suffer irreparable injury if the relief is not granted;

3.     whether the balance of hardships favors the party seeking the relief; and

4.     whether public policy favors a grant of the injunction.

Schoen v. Schoen 167 Ariz. 58, 804 P.2d 787 (1990); Burton v. Celentano, 134 Ariz. 594, 658 P.2d 247 (App.1982).

**A.     PLAINTIFF HAS A STRONG PROBABILITY OF SUCCESS ON THE MERITS**

In making the offer to elect the Opt Out Provision, and by Plaintiff's acceptance of that offer, a binding contract was made between Plaintiff and Defendant.  Plaintiff and Defendant

have performed that contract for almost five years.  Defendant's notice to Plaintiff that it would no longer honor that agreement after December 31, 2010, and Defendant's unequivocal refusal to reconsider its position, is an anticipatory breach of the agreement between Plaintiff and Defendant.  Enforcement of the agreement would be neither harsh nor unfair, but rather a fulfillment of the obligations entered into by competent parties in an arms-length bargain.

Defendant's attempt to repudiate the agreement and unilaterally reduce its payments of retirement benefits to Plaintiff, and Defendant's unequivocal refusal to reconsider its intended action, is a breach not only of the specific terms of the agreement reached between Plaintiff and Defendant, but a breach of the implied obligation in every contract to act fairly and in good faith. To the extent that Defendant may have intended at the time of offering the Opt Out Provision to Plaintiff to obtain Plaintiff's surrender of his right to receive the group term life insurance and later to reduce or eliminate the supplemental income, such action would clearly have been fraudulent and deceitful.  In either case, Defendant's actions cannot be condoned, and Plaintiff is likely to prevail on the merits.

**B.    ABSENT INJUNCTIVE RELIEF, PLAINTIFF WILL SUFFER IRREPARABLE HARM**

Plaintiff has no adequate remedy at law and will suffer irreparable harm in the absence of injunctive relief.  In the event injunctive relief is not granted, Plaintiff would be required to commence multiple lawsuits to obtain the legal remedy of monetary damages.  Commencing in January, 2011, each month in which Defendant fails to pay to Plaintiff the supplemental income to which the parties had agreed will be a separate breach of the agreement.  In order to obtain monetary damages for each such breach of the agreement, Plaintiff would be required to bring multiple actions.  Injuries remedial only by multiple lawsuits are irreparable.  The Power P.E.O.,

Inc.  v. Employees Insurance of Wausau, 201 Ariz. 559, 38 P.3d 1224 (App.Div.1, 2002).  See

also, Lee v. Bickell, 292 U.S. 415, 54 S.Ct. 727 (1934).  Absent injunctive relief, the injury to

Plaintiff is irreparable.

**C.     UNDER A BALANCE OF HARDSHIP TEST, PLAINTIFF'S IRREPARABLE INJURIES SUBSTANTIALLY OUTWEIGH ANY HARM DEFENDANT MIGHT SUFFER IF AN INJUNCTION IS ISSUED**

An award of an injunction is a matter of careful balancing of the interests of the

respective parties.  As related in the discussion above, Plaintiff's injury caused by Defendant's

breach of its agreement will be irreparable.  Plaintiff will not only suffer the loss of income in his

retirement to which he is entitled, he will be required to commence multiple lawsuits, at

considerable expense, to obtain any legal remedy.  By enjoining Defendant's intended breach of

the parties' agreement, the Court will remedy the wrong while doing nothing to Defendant to

which it had not agreed.  Defendant obtained a surrender of Plaintiff's right to receive from

Defendant the group term life insurance, at significant saving to Defendant.  There is nothing

inequitable in requiring Defendant to provide the consideration it had agreed to provide in return

for such surrender.  The equities weigh heavily in Plaintiff's favor, entitling Plaintiff to

injunctive relief.

**D.     ISSUING AN INJUNCTION WOULD SERVE THE PUBLIC INTEREST**

In passing upon a request for preliminary or permanent injunction, the public interest

which may be in jeopardy absent the injunction is a factor requiring consideration.  The public

has a strong interest in enforcing valid contracts.  Defendant has contravened this policy by

advising Plaintiff of its intent to breach its agreement with Plaintiff.  By granting an injunction,

the Court would uphold the validity of contractual relations while restraining Defendant's

breach.

Dated this _22_ day of October, 2010.

THE HELMS LAW FIRM, P.L.C.

By: _____

Michael G. Helms
2600 North Central Avenue
Suite 940
Phoenix, Arizona 85004
Telephone: (602) 358-2060
Attorneys for Plaintiff

## AFFIDAVIT

STATE OF ARIZONA     )
                      ) ss.
County of Maricopa     )

Richard L. Helms, being first duly sworn upon oath, deposes and says:

1.     I am the Plaintiff in the within action.  I make this Affidavit upon personal knowledge unless otherwise stated.

2.     For approximately thirty-seven (37) years I was employed by Principal Life Insurance Company ("Principal") at its corporate offices in Des Moines, Iowa.  I retired from Principal on March 31, 2006.

3.     Following retirement, my wife and I moved to Pinal County, Arizona, where we now reside.

4.     I began my employment at Principal as an actuary.  During the course of my employment, I eventually served as a senior officer, and was a Vice President of Principal immediately prior to my retirement.

5.     During my employment at Principal, Principal provided various benefit programs for its employees, including a retirement plan, in order to encourage employees to continue their employment at Principal.  Such retirement plan included, in part, certain group term life insurance on the life of the employee/retiree.

6.     At the time of my retirement, I would have been entitled to receive Basic Life Insurance in the face amount of $438,000.00.  The face amount of the Basic Life Insurance would have decreased each year after my age 60 until it reached a level amount of $144,540.00 at my age 74.

7.     Prior to my retirement, Principal offered to retiring employees an Opt Out Provision, whereby retiring employees could elect to "opt out" of receiving a portion of the group term life insurance benefit to which they would otherwise be entitled and instead receive a monthly supplemental retirement income.

8.     Prior to my retirement, Principal specifically offered to me an Opt Out Provision, pursuant to which I could elect to surrender the Basic Life Insurance in excess of $50,000.00 face amount, and receive in its stead an amount of monthly supplement retirement income.  The monthly income for taking the Opt Out Provision was to be approximately equal to the cost of life insurance surrendered at each age, calculated on an annual basis.  The monthly income would change at each age, due to the difference in cost of group term life insurance at each age.

9.     While the amount of life insurance surrendered would otherwise have leveled out at age 74, the monthly income would increase each year thereafter because the cost of insurance

would increase each year thereafter.  A copy of the schedule provided to me by Principal in January, 2006, showing the amount of income I was to receive if I chose the Opt Out Provision is attached hereto as **Exhibit 1**.

10.    Prior to my retirement, I elected to take the Opt Out Provision and notified Principal of such decision.  Thereafter, from the time of my retirement until the present I have been receiving the monthly supplemental retirement income, and surrendered my right to receive the Basic Life Insurance benefit in excess of $50,000.00, as agreed between Principal and myself.

11.    In June, 2010, I received correspondence from Principal dated June 28, 2010, informing me that Principal intended to "freeze" the cost of insurance used to calculate the monthly income benefit as of December 31, 2010 for those former employees who had retired between March 4, 2006 and February 28, 2010.  A copy of such correspondence is attached hereto as **Exhibit 2**.

12.    I have directed several communications to Principal concerning Principal's intended changes to our agreement, and have even requested the option to rescind my election of the Opt Out Provision so as to obtain the full amount of Basic Life Insurance that I surrendered at the time of my retirement, but Principal has advised that their decision to change the Opt Out Provision is final and that they intend to implement such change as of December 31, 2010.  Principal further advised me that I could not now elect to take the group term life insurance, as my election to take the Opt Out Provision was irreversible.

13.    Principal's stated intention to unilaterally reduce the monthly supplemental retirement being paid to me is a breach of the agreement made between Principal and myself at the time of my retirement.

DATED this __21st__ day of October, 2010.

_Richard L. Helms_ (signature)

Richard L. Helms

SUBSCRIBED AND SWORN to before me this _21st_ day of October, 2010.

_Susanne C. Maxfield_ (signature)
Notary Public

My Commission Expires: 1/31/2013

SUSANNE G. MAXFIELD
Notary Public - Arizona
Pima County
My Comm. Expires Jan 31, 2013

# EXHIBIT 1

Name: Richard Helms  
SS#:  
Date of Retirement: 03/31/2006  
Today's Date: 01/23/2006

| Age | Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 59 | 04/01/2006 | $438,000 | $50,000 | $388,000 | $0.74 | $287.12 | $438,000 | $140.16 | $488,000 |
| 60 | 01/01/2007 | $438,000 | $50,000 | $388,000 | $0.81 | $18.16 | $438,000 | $140.16 | $488,000 |
| 61 | 01/01/2008 | $416,100 | $50,000 | $366,100 | $0.92 | $396.61 | $416,100 | $133.15 | $466,100 |
| 62 | 01/01/2009 | $394,200 | $50,000 | $344,200 | $1.03 | $64.53 | $394,200 | $126.14 | $444,200 |
| 63 | 01/01/2010 | $372,300 | $50,000 | $322,300 | $1.15 | $70.65 | $372,300 | $119.14 | $422,300 |
| 64 | 01/01/2011 | $350,400 | $50,000 | $300,400 | $1.29 | $87.52 | $350,400 | $112.13 | $400,400 |
| 65 | 01/01/2012 | $328,500 | $50,000 | $278,500 | $1.43 | $98.26 | $328,500 | $105.12 | $378,500 |
| 66 | 01/01/2013 | $306,600 | $50,000 | $256,600 | $1.59 | $407.99 | $306,600 | $98.11 | $356,600 |
| 67 | 01/01/2014 | $284,700 | $50,000 | $234,700 | $1.76 | $413.07 | $284,700 | $91.10 | $334,700 |
| 68 | 01/01/2015 | $262,800 | $50,000 | $212,800 | $1.94 | $406.62 | $262,800 | $84.10 | $312,800 |
| 69 | 01/01/2016 | $240,900 | $50,000 | $190,900 | $2.13 | | $240,900 | $77.09 | $290,900 |
| 70 | 01/01/2017 | $219,000 | $50,000 | $169,000 | $2.35 | $387.15 | $219,000 | $70.08 | $269,000 |
| 71 | 01/01/2018 | $197,100 | $50,000 | $147,100 | $2.56 | $76.58 | $197,100 | $63.07 | $247,100 |
| 72 | 01/01/2019 | $175,200 | $50,000 | $125,200 | $2.79 | $49.31 | $175,200 | $56.06 | $225,200 |
| 73 | 01/01/2020 | $153,300 | $50,000 | $103,300 | $3.03 | $13.00 | $153,300 | $49.06 | $203,300 |
| 74 | 01/01/2021 | $144,540 | $50,000 | $94,540 | $3.27 | $309.15 | $144,540 | $46.25 | $194,540 |
| 75 | 01/01/2022 | $144,540 | $50,000 | $94,540 | $3.54 | $34.87 | $144,540 | $46.25 | $194,540 |
| 76 | 01/01/2023 | $144,540 | $50,000 | $94,540 | $3.82 | $61.14 | $144,540 | $46.25 | $194,540 |
| 77 | 01/01/2024 | $144,540 | $50,000 | $94,540 | $4.12 | $389.61 | $144,540 | $46.25 | $194,540 |
| 78 | 01/01/2025 | $144,540 | $50,000 | $94,540 | $4.44 | $419.78 | $144,540 | $46.25 | $194,540 |
| 79 | 01/01/2026 | $144,540 | $50,000 | $94,540 | $4.78 | $451.90 | $144,540 | $46.25 | $194,540 |
| 80 | 01/01/2027 | $144,540 | $50,000 | $94,540 | $5.14 | $485.94 | $144,540 | $46.25 | $194,540 |
| 81 | 01/01/2028 | $144,540 | $50,000 | $94,540 | $5.54 | $323.75 | $144,540 | $46.25 | $194,540 |
| 82 | 01/01/2029 | $144,540 | $50,000 | $94,540 | $5.97 | $564.40 | $144,540 | $46.25 | $194,540 |
| 83 | 01/01/2030 | $144,540 | $50,000 | $94,540 | $6.44 | $608.84 | $144,540 | $46.25 | $194,540 |
| 84 | 01/01/2031 | $144,540 | $50,000 | $94,540 | $6.98 | $659.89 | $144,540 | $46.25 | $194,540 |
| 85 | 01/01/2032 | $144,540 | $50,000 | $94,540 | $7.57 | $715.57 | $144,540 | $46.25 | $194,540 |

# EXHIBIT 2



June 28, 2010


Richard Helms
38087 S Boulder Wind Dr
Tucson AZ 85739

You are currently receiving income under the Opt Out Provision of the Group Term Life Insurance policy which allows you to opt out of coverage over $50,000 in order to receive income.

The company periodically reviews the benefit programs to ensure they are competitive and align with market practice within the finance and insurance industry.

As a result of a recent review, the company will be making a change to the Opt Out income calculation effective January 1, 2011 for members who retired on or after March 4, 2006 through February 28, 2010.  You will continue to receive the Opt Out income based on the current rate schedule in place today; however, **the rate will freeze as of your age on December 31, 2010.**  Your Opt Out income will only change as your amount of coverage decreases due to age reductions as shown in the enclosed schedule.

If you have any questions regarding this change, please contact a customer service representative in Human Resources at (866) 524-6947 or (515) 247-6947 or by e-mail at myhr@principal.com.

Principal Life Insurance Company periodically reviews its plans and policies. The benefits and policies described in this letter are subject to change or termination at any time.  In the event of any conflict between benefit plan provisions and this letter, the terms of the applicable plan will control.


HR Benefits
Enclosure

| Name | Richard Helms | Date of Retirement: | 03/31/2006 |
|---|---|---|---|
| SS# | | Today's Date: | 09/28/2010 |
| Alt ID: | | | |

| Age | Date | Return of future cost basis offset insurance premium opt out | opt out | income per premium $1000 | income per premium $1000 | income per premium $1000 | Lump Sum | Monthly Cash Supplemental Insurance 32/1000 | Total Life Benefit |
|---|---|---|---|---|---|---|---|---|---|
| 63 | 01/01/2010 | $372,300 | $50,000 | $322,300 | $0.620 | $199.93 | $372,300 | $118.14 | $432,300 |
| 64 | 01/01/2011 | $350,400 | $50,000 | $300,400 | $0.694 | $208.48 | $350,400 | $112.13 | $400,400 |
| 65 | 01/01/2012 | $328,500 | $50,000 | $278,500 | $0.694 | $193.28 | $328,500 | $105.12 | $378,500 |
| 66 | 01/01/2013 | $306,600 | $50,000 | $256,600 | $0.694 | $178.08 | $306,600 | $98.11 | $356,600 |
| 67 | 01/01/2014 | $284,700 | $50,000 | $234,700 | $0.694 | $162.88 | $284,700 | $91.10 | $334,700 |
| 68 | 01/01/2015 | $262,800 | $50,000 | $212,800 | $0.694 | $147.68 | $262,800 | $84.10 | $312,800 |
| 69 | 01/01/2016 | $240,900 | $50,000 | $190,900 | $0.694 | $132.48 | $240,900 | $77.09 | $290,900 |
| 70 | 01/01/2017 | $219,000 | $50,000 | $169,000 | $0.694 | $117.28 | $219,000 | $70.08 | $269,000 |
| 71 | 01/01/2018 | $197,100 | $50,000 | $147,100 | $0.694 | $102.07 | $197,100 | $63.07 | $247,100 |
| 72 | 01/01/2019 | $175,200 | $50,000 | $125,200 | $0.694 | $86.88 | $175,200 | $56.06 | $225,200 |
| 73 | 01/01/2020 | $153,300 | $50,000 | $103,300 | $0.694 | $71.68 | $153,300 | $49.06 | $203,300 |
| 74 | 01/01/2021 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 75 | 01/01/2022 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 76 | 01/01/2023 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 77 | 01/01/2024 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 78 | 01/01/2025 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 79 | 01/01/2026 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 80 | 01/01/2027 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 81 | 01/01/2028 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 82 | 01/01/2029 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 83 | 01/01/2030 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 84 | 01/01/2031 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 85 | 01/01/2032 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 86 | 01/01/2033 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 87 | 01/01/2034 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 88 | 01/01/2035 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 89 | 01/01/2036 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |
| 90 | 01/01/2037 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | $144,540 | $46.25 | $194,540 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 91 | 01/01/2038 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | | $144,540 | $46.25 | $194,540 |
| 92 | 01/01/2039 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | | $144,540 | $46.25 | $194,540 |
| 93 | 01/01/2040 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | | $144,540 | $46.25 | $194,540 |
| 94 | 01/01/2041 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | | $144,540 | $46.25 | $194,540 |
| 95 | 01/01/2042 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | | $144,540 | $46.25 | $194,540 |
| 96 | 01/01/2043 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | | $144,540 | $46.25 | $194,540 |
| 97 | 01/01/2044 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | | $144,540 | $46.25 | $194,540 |
| 98 | 01/01/2045 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | | $144,540 | $46.25 | $194,540 |
| 99 | 01/01/2046 | $144,540 | $50,000 | $94,540 | $0.694 | $65.61 | | $144,540 | $46.25 | $194,540 |